[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17692
Non-Argument Calendar

_____

D.C. Docket No. 5:15-cr-00041-WTH-PRL-5


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODANE LAMB,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 21, 2017)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Rodane Lamb appeals his jury conviction and 144-month sentence for

conspiring to distribute 5 or more kilograms of cocaine, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(A), and 846.  On appeal, he argues that the district court erred in denying his motion for a judgment of acquittal based on insufficient evidence.  After careful review, we affirm.

We review de novo whether the evidence was sufficient to sustain a criminal conviction, viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict.  United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009).  The evidence is sufficient if a reasonable trier of fact could determine that it established the defendant's guilt beyond a reasonable doubt.  Id. at 1284-85.  Similarly, the district court's denial of a motion for judgment of acquittal is reviewed de novo.  United States v. Holmes, 814 F.3d 1246, 1250 (11th Cir.), cert. denied, 137 S. Ct. 294 (2016).

Where the defendant's motion for judgment of acquittal before the district court does not encompass his appellate argument for insufficiency of the evidence, we review for plain error.  United States v. Hunerlach, 197 F.3d 1059, 1068 (11th Cir. 1999).  To establish plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights.  United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007).  If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id.

To prove participation in a conspiracy to distribute drugs, the evidence must establish beyond a reasonable doubt that a conspiracy existed between two or more persons to distribute drugs, that the accused knew of the conspiracy, and, with this knowledge, the accused voluntarily became a part of the conspiracy. United States v. Green, 40 F.3d 1167, 1173 (11th Cir. 1994). Proof may be established through circumstantial evidence or from inferences drawn from the conduct of an individual or confederates. Id. The government does not have to prove that the alleged conspirator knew all of the details of the conspiracy or that he participated in every phase of the scheme. United States v. Guerrero, 935 F.2d 189, 192 (11th Cir. 1991). A common purpose and plan may be inferred from the circumstances. United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001).

For starters, we review Lamb's argument that the evidence was insufficient to show a conspiracy for plain error, because he did not raise that argument before the district court. See Hunerlach, 197 F.3d at 1068. Regardless of the standard we apply, however, we can find no error, much less plain error. According to the co-conspirators' trial testimony, they worked with Lamb, they split money with Lamb, they jointly participated in shipping money back and forth between Florida and California, Lamb assisted in packaging cocaine for sale, and Lamb bought cocaine for his own use and on behalf of others. For instance, Terrell Brown described Lamb as his partner, and explained that Lamb purchased cocaine for both of them,

3

and "with that agreement," they both sold their own cocaine. Cherish Brown testified that Lamb visited her house several times in 2013 and 2014 to count cash, package cocaine, and receive shipments of cocaine. Jose Huerta testified that he, Lamb, and Terrell Brown rented a California apartment to facilitate their drug sales. Huerta also said that in California in 2014, he witnessed John Luckett and Lamb split money that had come in the mail, with Lamb receiving about $70,000 or $80,000. In addition, postal employees testified that large sums of money were sent between Florida and California, some of it was addressed to Lamb, some of it was to and from Terrell Brown or other people with the last name Brown, and a person identifying himself as Lamb called about one of the packages.

As the record reveals, the testimony of government witnesses and Lamb's co-conspirators was sufficient for a reasonable juror to determine beyond a reasonable doubt that: (1) a conspiracy to distribute cocaine existed between Lamb, Huerta, Terrell Brown, Cherish Brown, and Luckett; (2) Lamb knew of the conspiracy; and (3) with that knowledge, he voluntarily became part of the conspiracy. See Green, 40 F.3d at 1173. Moreover, based on this testimony, the jury could infer that Lamb knew sufficient details of the conspiracy to indicate that he was voluntarily a part of it, and not just a customer of Huerta or Terrell Brown or an independent drug seller. And, as we've said, the government did not need to prove that Lamb was the leader or knew every detail of the conspiracy. Guerrero,

4

935 F.2d at 192.   Thus, the government presented sufficient evidence of the conspiracy, and the district court did not commit error, much less plain error, by denying Lamb's motion for judgment of acquittal.   See Hunerlach, 197 F.3d at 1068; Holmes, 814 F.3d at 1250.

As for Lamb's argument that the evidence was insufficient as to the amount of cocaine, we review it de novo because he raised that argument before the district court.   See Jiminez, 564 F.3d at 1284.   But once again, we can find no error because there was more than sufficient evidence for a reasonable jury to decide that the conspiracy involved five kilograms or more of cocaine.   As the record shows, Huerta testified that Lamb would usually buy between 12 and 15 kilograms, law enforcement saw Terrell Brown and Lamb driving around together on the same day Huerta had the 40 kilograms of cocaine in Florida to deliver to Terrell Brown, and the jury was shown the 40 kilograms that had been recovered. Viewing the evidence in the light most favorable to the government, and drawing all reasonable factual inferences in favor of the jury's verdict, the evidence was sufficient for a reasonable trier of fact to determine that, between 2012 and August 5, 2015, Lamb conspired to distribute cocaine in the amount of five kilograms or more, as charged in the indictment.   See Jiminez, 564 F.3d at 1284-85.

**AFFIRMED.**

5